## SMART *v.* PORTSMOUTH AND CONCORD RAILROAD.

The provision in the act of December 25, 1844, requiring that damages assessed in favor of land-owners for land taken for railroad corporations, shall be paid into the treasury by the corporations, and tendered by the commissioners, before any entry to construct the railroad, was designed for the protection of the land-owner, and may be waived by him. And a railroad corporation that has adopted that act, and entered upon land taken under its provisions, is liable in debt for the damages awarded, at the suit of the land-owner.

If the corporation have paid the sum into the State treasury, *quære,* if the case would be different.

A right of action having attached under that act, prior to the act of July 2, 1847, is not divested by a change of the location of the road, and an assessment of the actual damage to the land-owner, under the provisions of the latter act.

DEBT, brought to recover the sum of $186.33, assessed by the railroad commissioners in conjunction with the

road commissioners of the county of Rockingham, as damages sustained by the plaintiff by the laying out of the defendants' railroad over his land, and the partial construction of the same.

The parties submitted this case to the decision of the court upon the following statement of facts:

The defendants were authorized by their charter, granted to them by the legislature of this State in 1845, to construct and finally complete for public use, and keep in use, a railroad from Portsmouth to Concord or Manchester, as appears by their charter, to which either party may refer; and, being unable to purchase, at rates to be agreed upon by the parties, the land for their said railroad, duly adopted, as part of their charter, the provisions of the act of the legislature of this State, entitled "An act to render railroad corporations public in certain cases, and constituting a board of railroad commissioners," approved December 25, 1844; and on the 5th day of March, 1846, made due application to the railroad commissioners of this State to examine the route proposed by them for their railroad, and to hear the parties interested in relation thereto. Whereupon the said commissioners, having duly notified and heard all parties interested, and examined the route proposed, were of opinion that the public good would be promoted by the laying out of a railroad upon the route proposed by the defendants, and made to the Governor and Council of this State a report of their said proceedings and decision in the premises, which report was filed in the office of the Secretary of State of this State on the 11th day of June, 1846. The Governor, with the advice of said Council, at their next session, on the 13th day of June, 1846, considered said report, and thereupon decided, that, in their opinion, the public good would be promoted by the laying out of said railroad on the route proposed; which decision was on the same day communicated by the Governor to the said

railroad commissioners. On the 27th day of May, 1847, the railroad commissioners, upon due application made to them for that purpose by the defendants, after duly notifying and hearing all parties interested, deemed it conducive to the interest of all concerned to lay out said railroad at different and successive times, and to lay out in the first instance that part thereof which is between land occupied by Tobias H. Miller, in Portsmouth, and the intersection of said railroad with the Boston and Maine Railroad in Newmarket; and accordingly laid out that part of said railroad between the termini last mentioned, and laid out the same over land owned by the plaintiff for the term of his natural life, situated in Newmarket, being his homestead farm, for the distance of two hundred and twenty rods, and carrying the width of six rods for all that distance. And the said railroad commissioners, in conjunction with the road commissioners for said county, assessed the damages sustained by the owners of the land over which said railroad passed; and among others assessed to the plaintiff, for damages sustained by him by the laying out of said railroad over his said land as aforesaid, the sum of one hundred and eighty-six dollars and thirty-three cents; and made to the Governor and Council of this State, on the 21st day of June, 1847, a report of all their proceedings in the premises, containing a description of the railroad thus laid out by them, and stating the sums by them assessed to the several owners of the land through which said railroad passed, and the sum of one hundred and eighty-six dollars and thirty-three cents, assessed to the plaintiff; which report was filed in the office of the Secretary of State on the 21st day of June, 1847, and such proceedings were had in the premises, in due course of law, that said railroad, laid out as aforesaid, became and was duly laid out and established, and the plaintiff's land aforesaid duly taken therefor. On the 7th day of June, 1847, and on divers other days in

said month of June, the defendants entered upon the said land of the plaintiff without his consent, for the purpose of constructing their railroad thereon, and partly graded and constructed the same, making excavations in some places and embankments in others; but, before entering upon said land for the purpose aforesaid, tendered to the plaintiff the sum of one hundred and eighty-six dollars and thirty-three cents, awarded to him; which he at that time refused to receive, but afterwards, on the 10th day of July, 1847, was willing to receive, and demanded of the defendants, but they refused to pay the same. And this action was commenced January 5, 1848, to recover said sum of one hundred and eighty-six dollars and thirty-three cents, and the interest thereon. The tender above named was made by George W. Towle, as agent, and without authority, other than what he derived from said corporation. After the proceedings were had, by which damages were assessed to the plaintiff for the land above named, the Portsmouth and Concord Railroad applied to the railroad commissioners of this State, by petition bearing date the 26th day of August, 1847, setting forth that they were desirous of improving their line of road, by a variation of the location thereof between the farm of James W. Smith, in the town of Stratham, and the western terminus of their railroad in Newmarket, as then laid out, and land damages assessed thereon, so that the same should proceed from said Smith's farm to the Boston and Maine Railroad, near the old meeting-house in said Newmarket; and requested them to examine that part of the road and the proposed variation, and to lay out said variation, if, in their opinion, the public good would be promoted thereby, and to cause the damages thereon to be duly assessed, and to appraise the actual loss or damage to the owners of land on that part of the road for which the proposed variation would be a substitute. The said railroad commissioners thereupon appointed Thursday,

the 13th day of September, 1847, at ten o'clock in the forenoon, and a place when and where a hearing would be had upon said petition; due notice whereof was given to the plaintiff and all other persons interested in the subject matter of said petition. Said commissioners met at the time and place appointed, and duly heard all the parties appearing; and, after due examination, were of the opinion that the public good would be promoted by the proposed variation, and proceeded and laid out the same; and said commissioners appraised the loss or damage to the owners of land on that part of the road for which said variation is a substitute, and they appraised the loss or damage to the plaintiff on that part of said road for which said variation is a substitute, occasioned by the laying out of said variation as a substitute for the said road over the land of said plaintiff, at the sum of twenty-six dollars and sixty-seven cents, and made due report thereof, and returned the same to the Governor and Council of this State; which report was duly filed in the office of the Secretary of State, but the Governor and Council have never considered or acted upon the same; which said sum of twenty-six dollars and sixty-seven cents, with the interest thereon, amounting to the sum of one dollar and fifty-eight cents, the defendants are ready, and ever since have been ready and willing to pay, and bring the same into court and offer to the plaintiff. It was agreed that judgment be rendered according to the opinion of the Superior Court upon the foregoing case.

*Stickney*, for the plaintiff.

*Emery* and *Bartlett*, for the defendants.

WILCOX, J. There are many proceedings required by our law in the laying out of railroads, which are designed for the benefit and protection of the land-owners. Whether

the public good requires a particular road to be laid out is first to be determined by the railroad commissioners, whose report, if favorable, must still be approved by the Governor and Council.

The railroad must be laid out by public officers. The damages to the several proprietors whose lands are taken for it, must be assessed by a board consisting of the railroad commissioners, and the road commissioners for the county in which the lands lie; and having been so ascertained, must, except in some particular cases, be tendered before entry to construct the road.

The State thus acquires a right, which it may transfer, by a lease for a limited time, to the corporation; but the corporation is the party that puts all these proceedings in motion. They, and they only, can call out the commissioners; they pay all the expense; they deposit in the State treasury the money to pay the damages, and they alone can build the road.

Most of these proceedings, as has been said, are designed for the security of the land-owners, and undoubtedly may be waived by them. No entry to construct the road can generally be made until the damages have been tendered; and if such entry is made, it is a trespass, and the parties are liable accordingly. But the land-owner may waive the trespass, and receive the money, if he so elect.

In this case, it does not appear that the defendants deposited the damages assessed, in the State treasury; but they tendered the amount to the plaintiff, and, so far as appears, still hold the money. We do not see, then, why the plaintiff may not, if he will, waive the trespass, the deposit with the State treasurer, and the tender by the railroad commissioners, and claim the money of the defendants, who must ultimately pay it, and who have the money in their own hands. Having entered, and in part constructed the road with the plaintiff's money in their hands, we think he may, if he chooses, receive it of them,

and waive its transmission in the ordinary channel, through the State treasury, which was intended solely for his benefit. If the defendants had deposited the money, the results might possibly be different.

There are various provisions in the law, referring to the right of the land-owners to bring an action for the damages assessed, which can refer only to cases like the present, because there is no pretence that an action for damages will lie against the State, or the commissioners. Ch. 227, sec. 4, Laws of 1845.

By this statute it is provided that no action will lie to recover the damages assessed, till an entry to construct the road; plainly implying that an action may be maintained after entry, and that the only remedy is not by trespass, or by an application to the Treasurer of the State.

After the damages were awarded to the plaintiff, and after the tender of the amount, and the entry to construct the road, the act of July 2, 1847, was passed, authorizing a change in the location of a railroad, and providing that if the damages assessed had not been paid, only the actual damage sustained at the time of such change should be paid.

But we are all of opinion that that statute does not apply to this case. The plaintiff's right to the damages was a vested right, and was perfect and complete before the passage of that act. *Hallock* v. *Franklin*, 2 Met. 558; *Huntington* v. *Berkshire*, 2 Gr. 179; *Hampton* v. *Coffin*, 4 N. H. 517.

So it has been held that the statute of June 23, 1842, which limits the claim of the land-owner to actual damages, in cases in which the road has been discontinued before being opened for public travel, did not affect the rights that had accrued before the statute, to recover the damages assessed upon the laying out of the highway. *Willey* v. *Epping*, Rockingham; *Clough* v. *Unity*, Sullivan county, July term, 1846.

In the case last named the road had been laid and the damages assessed prior to the statute of June 23, 1842, after which the town instituted a petition for leave to discontinue. The court say, " by the laying out of the road and the award of damages, a right attached to the intestate to demand and recover the sum awarded. As in *Coffin* v. *Hampton,* the public acquired an equivalent, in the right of way for such time as they might see fit to enjoy it. The value of that right was judicially determined by the committee, who were fully instructed as to the contingent or determinable interest acquired by the public, and must be supposed to have made their award with suitable reference to the nature of the right given in exchange for the sum adjudged by them."

" Their doings became a matter of record, and the right· of the town to enter upon the land of the intestate, and construct a public way upon it, together with the corresponding right of the intestate to demand, sue for and recover the sum assessed as an equivalent for the easement to which his land was subjected, became severally established. If the intestate forbore to assert his claim, the right of the town was not impaired by such forbearance ; nor, on the other hand, was the right of the proprietor, by force of the proceedings and by the record, impaired or capable of being impaired, as the law then stood, by any forbearance, or by any act of the town, taken with a view of renouncing the rights they had acquired by those proceedings."

This reasoning is applicable to the circumstances of this case ; in which the defendants, upon their own motion, and by force of proceedings instituted for the purpose by themselves, acquired an easement upon the plaintiff's land, to be held and enjoyed for so long a time as they, in harmony with just views of the public good, should elect. This determinable interest, in the contingencies which affect such cases, was of short duration

indeed; but it is precisely the thing for which damages were awarded, and for which the plaintiff acquired, by the defendant's own act, a right of action. This right the legislature cannot take away.

*Judgment for the plaintiff.*